United States v. King and Goodman and Wheeler. Practically, Your Honor, it's just United States v. Goodman. I'm the only one here. That's what I thought. I didn't want to leave anybody out in the announcement anyway. Mr. Tamayo, good morning. Good afternoon, Your Honor. Yes, thank you. I made a note on my paper to say that. Good afternoon, Your Honors. My name is Peter Tamayo. I represent Collier Goodman, the appellant in this proceeding. Your Honor, this is a case in which the government, we argue, failed to prove that my client was part of the conspiracy as alleged in the indictment. The indictment alleged a conspiracy, a broad conspiracy, involving substantial amounts of cocaine and crack during the period of time of 2015 through August of 2016. The indictment charged three men when they went to trial, and the final form charged three men in that indictment with the amount of 5 kilograms or more or 28 grams of crack. But the jury came back, and I think this is kind of telling us to the evidence of this case, with kind of an odd verdict. They found different amounts for each of the three defendants. We argue, Your Honor, that that is telling because really the government didn't prove a single conspiracy. There was a substantial variance here. They proved at most that Mr. Goodman sold some amounts of drugs to different people at different times. Distribution amounts. Excuse me? Distribution-level amounts. Yes, that he distributed. And sometimes on credit. Yes, Your Honor, but never on consignment. In other words, the credit, there was some occasions where he, according to the testimony, and I have to accept the evidence in a slight more favorable to the government, we have Ms. Flores who testified that she obtained cocaine from him and crack from him and paid him later. After she sold it? Well, at some point she paid him later. She also during this time had a relationship with him, a boyfriend-girlfriend, if you would, relationship with him, which was kind of what she did. She went with different people at different times and purchased drugs and obtained drugs from them. And at a point in time he insisted that she pay him. And then at a point in time they separated and she no longer obtained drugs from him. This case, Your Honor, had started with this broad investigation of a cocaine and crack distribution network that existed in Orange County at this period of time, which focused then on this individual named Niquis. And he, Your Honor, was the subject of the investigation. They put a poll camera in front of his house. He was arrested and indicted with a firearm and ultimately took a guilty plea to that, and then the government restructured its theory for this trial. And in their restructured theory suddenly it was Mr. Goodman who was the focus of this conspiracy, and he was supposed to be the center of it. It's telling that Judge Seibel, in sentencing Mr. Goodman, pointed out that he was no kingpin, her words, in this event. What we had, Your Honor? She didn't say he was no non-conspirator either. Well, the verdict was that he was a conspirator, but the indictment, Your Honor, charged a much broader conspiracy than the evidence showed. The indictment and the government's theory was that this was something that was going on over a long period of time, that there was some sort of a pattern of activity that was taking place, but yet they never found any support for that in any concrete evidence. They made more than 50 purchases by undercover agents during the course of this investigation. None of that cocaine or crack ever was traced back to Mr. Goodman. He was not charged with any distributions. He was only charged with a conspiracy. There was the one individual, Mr. Borea, who was arrested with the only drugs in his entire case. And the government, in their Rule 28J letter, points to the summary order in that case and says, well, that should be controlling. And, Your Honor, respectfully, I disagree, because the situation with Mr. Borea is even those drugs were not linked to Mr. Goodman. Why? Because there was no fingerprints, there was no DNA testing on that, and most importantly, the surveillance saw those drugs being delivered, they say, in a shopping bag. There was no shopping bag. There was no shopping bag seized from that car, even though the surveillance agents followed that car from the point in time they saw Mr. Borea meeting with Mr. Goodman to the point in time that they arrested him. But they didn't find that packaging. They found that drugs where? They found it under the floor mat in the car. Respectfully, Your Honor, there was no link to that, to those drugs, to Mr. Why don't we have a hub and spoke here? Well, you know, that's the government's theory is that there's a hub and spoke. Right. But there's no – I'll just tell you who I'm thinking of. Wheeler, Borea, Beniquez, and Flores. May, but what we have here and the problem with the analogy of hub and spoke is if you think of – Are you challenging that as a legal matter or are you – I'm charging that as not as – that is a shorthand for a hub spoke rim conspiracy, which is what the Supreme Court discussed in Kotickas. And the idea of the rim is very important because the rim is what gives it cohesion. Otherwise you have a seller who goes and sells to other buyers. And if you take the government's theory, then every one of those is always one conspiracy, whereas in this case I think it's very telling because here we know that some of those buyers are in themselves from time to time also sellers, like Mr. Beniquez, and that different people like Mr. Wheeler and Ms. Flores, who you also mentioned, testified they had alternative sources of supply. There was no – this was just one source that they could go to. They had no joint connection to a conspiracy that would give it any kind of cohesion. What's happening is that we're getting to a point where we're diluting this concept of hub and spoke to get a situation where it's just if you have buyers and sellers, then it's a conspiracy. Your Honor's – As long as they reasonably understood that they were part of something where there were – you know, where the guy they were getting it from was going out and also selling and they were coming back to him. But that has no meaning to them. What basis do they have? How is there a coming together of having a common interest? I mean, if this was – what difference would it make to Ms. Flores if Mr. Goodman sold to more than one person? It doesn't keep him in business. I mean, he could be just buying from somebody else and selling it to her and making a little bit of a markup. It doesn't make any difference. He's just inherited one source that she had for a supplier until she decided to go to somebody else. She had no interest in him staying in business that she had to ensure that he was able to buy a kilo and then split it up. Thank you. Thank you, Your Honor. You deserve three minutes for rebuttal, Mr. Tomeo. Ms. Nichols. Thank you, Your Honor. May it please the Court. Allison Nichols for the United States. I represented the United States both at trial and here on appeal. Your Honors, the judgment here should be affirmed in every respect. First of all, there is no basis to disturb the jury's verdict that the evidence at trial was sufficient to convict Mr. Goodman beyond reasonable doubt on the conspiracy count. To the contrary, the evidence proved that for over a year, Collier Goodman trafficked in large wholesale quantities of cocaine, which he provided on credit to a few select drug dealers whom he expected, and this is confirmed by the intercepted wire conversations, whom he expected to work quickly and consistently to resell that cocaine to their own customers in order to return Goodman's money to him. In short, the evidence showed that Goodman and his dealers shared a conspiratorial purpose to engage in drug dealing. I can see how they, and you can help me with this, I can see how they each shared a conspiratorial, each of his dealers shared a conspiratorial purpose with Mr. Goodman. How is it that they are sharing it with each other, that is the other spokes that are just out there? In other words, what is the proof of the rim? Yeah. There's significant proof of the rim in this case, Your Honor, especially with respect to Mr. Goodman, who of course is at the hub. Right. We have the testimony of the cooperating witness, Denise Flores, who was a co-conspirator of Mr. Goodman's and of the other men who are charged. And she dealt first with Damon Wheeler, and in the course of buying redistribution quantities of drugs from Damon Wheeler, learned that Wheeler's supplier was Goodman and began dealing with Goodman directly. In the course of meeting Goodman and developing a personal drug relationship with him, she explained to Goodman the way that she had been operating with Wheeler. And so there's significant evidence of their awareness of each other's process. And then Ms. Flores, of course, goes on to deal with Juan Benitez, and she does that at significant quantities for over a year. So even though the law does not require this, Your Honor, there has been a lot of evidence in the case that actually these spokes all know each other and they have a good sense of what each other is doing as part of the conspiracy. Boria is, to a certain extent, the one, the dealer of Mr. Goodman's for whom the evidence is sort of less like the others, because there was no evidence of Ms. Flores dealing with Boria or knowing him. Nonetheless, and we don't argue in any way that it's controlling, but we think it's instructive that the Boria panel found the evidence as to Boria was sufficient to support the jury's inferences that Boria was part of that conspiracy. With these other players? Yes, Your Honor. And that's because they all shared an interest in this drug market and economy that they were part of continuing. And so when counsel says that Flores is indifferent to whether Wheeler is successful, that's actually incorrect, because what Goodman is doing is he's dealing wholesale quantities of drugs at wholesale prices to his dealers, and then he's expecting them to go out and sell and to return money to him. And we have very good evidence from the wire calls of that, like, supplier-dealer relationship between Goodman and multiple dealers in this conspiracy. We have, with respect to Goodman and Wheeler, we have the argument, which is in the record as government exhibit 511A3, which shows that Goodman becomes very angry with Wheeler when he gets behind on his drug dealing, and Wheeler tells Goodman that he was just taking two days off. And Goodman says, just shoot it back, because I could have got it done today. I don't need to wait two more days for you for when you feel like doing it. Let me get mine, the bread or the work, meaning the money or the drugs. And so while our position is that the cases don't draw a distinction between credit and consignment within sort of, like, the common law of bailments, here we do have very good direct evidence that Goodman considers these drugs to belong to him until the money is returned to him. After that intercepted call where there's a fight between the two of them, it shows that they made plans to meet. It shows that they did, in fact, meet. There was surveillance of that meeting. And there's text messages after that meeting showing that they made up. Wheeler texted Goodman, I hate disappointing you, and Goodman replies, let's work, man. And that's Government Exhibit 545 in the record at the appendix at 272. Let's work, man, shows that Goodman has a conspiratorial purpose in seeing Wheeler's downstream sales of additional drugs be successful. If Wheeler is unsuccessful, then Goodman can't get his money back, and then Goodman can't pay for more drugs that he wants to supply to his other dealers, including Juan Benitez and, at various times, Denise Flores. I'd like to move on to the evidence of the drug weight. There was significant evidence in this case that allowed the jury to appropriately infer that the amount of cocaine that was distributed during the course of this conspiracy was well in excess of 5 kilograms. So, again, I'm going to start with Denise Flores' testimony, because what she gives us is her own conduct, and we know from her testimony that the amounts of cocaine that she was dealing over the course of over a year were all ultimately obtained from Goodman. She starts out dealing with Wheeler in relatively small, but redistribution quantities, 10 to 20 grams a week over a couple months. That's, you know, about 100 grams or so. Then she moves on to Goodman. She deals with him for several months, starting at smaller amounts, 10 to 20 grams each of crack and of powder cocaine, and thereafter goes up to about 40 grams of each crack and powder cocaine biweekly. And she was dealing with Goodman directly from about May 2015 to August or September 2015. Then she begins dealing with Juan Benitez, and she testifies that she understood that Goodman was Benitez's supplier. So all of the cocaine that she was doing with Benitez was also cocaine that Goodman supplied during the course of this conspiracy. She testified that she was getting on an average 40 to 45 grams of both cocaine and crack on a weekly basis, and that she was dealing with Benitez for about a year until she was arrested. She was living with him in his home from about November to May. And so on Denise Flores' personal dealing alone, we're getting to about 3 kilos of cocaine. It adds up very quickly. But we know that actually Flores is, relatively speaking, something of a small fry in the Goodman cocaine conspiracy. She is getting from Benitez, who says over the wire that he's doing 500 a week. And so 500 a week for a year, again, we're getting to amounts that are significantly in excess of 5 kilograms. We also had evidence from the wire showing that Benitez owed Goodman $14,100, and that corresponds at $47 a gram, which was the evidence that Flores provided was what Goodman was charging. That corresponds to exactly 300 grams. So even at the lesser of 300 grams a week, Benitez is moving over 16 kilos a year. What we have from Denise Flores' testimony, Your Honors, is showing that these pieces of evidence that we have about the 200 grams from Boria that were seized, the amounts that Benitez says that he's moving over the wire, that makes sense, because she testifies about a daily drug operation that she was participating in day in and day out, a consistent and steady supply. And unless the Court has other questions, we would rest on the briefs. Thank you, Ms. Nichols. Mr. Tomeo. Yes, Your Honors. The problem with the prosecutor's arguments are that when we looked at the citations in her brief, they didn't support her arguments. I broke that down in the reply brief. I went through page by page where she said Ms. Flores said this, Ms. Flores said that, and it wasn't there. It's all spelled out. I did it all. I went through all that work because I was — because what's happened here is she's pieced together an argument. She's drawn inferences and taken inferences and stacked upon inferences, and the result is pure speculation. Mr. Beniquis is clear. There's evidence that's cited in — the pages are cited in the briefs, said I have alternative sources of supply, and yet the prosecutor says it all came from Mr. Goodman. There's a debt he had. We don't know what the debt was for. We do know that Mr. Goodman was in a legitimate business. He had a store. He had activity through the store. We don't know what Mr. Beniquis' debt was for because that wasn't developed. Ms. Flores' testimony, when you go and you read it, is what you would expect from somebody who's a drug user for many years. It's all over the place. When the prosecutor says that Ms. Flores got so many grams of cocaine and so many grams of crack from Mr. Goodman, she makes it sound like Ms. Flores had some organization that said, oh, I get 40 grams of crack and 40 grams of cocaine. That's not what she said. She said, I got 40 grams. And they said, was it 40 grams of crack or 40 grams of cocaine? And she said, yes. There was no paperwork here. They had an individual under investigation. They never even went into the store to look around. They did search once. They searched his home at the time of his arrest. They didn't search the store. They didn't come up with a shred of paper. They didn't find a computer record. They found nothing. What they had here is they took these speculations and they stood them on top of each other time and time again. As I said, it's all speculation when they go and she tells us about Ms. Flores' drug dealings. It's a spoke. It's a spoke that goes to a hub but doesn't create a wheel. The prosecutor said that there was a rim. There was no rim. She said that there was some relationship, some common understanding among the buyers. Even Ms. Flores, who was an insider, the ultimate insider, who had relationships with Wheeler, Goodman, and Manicris, she did not say there was any commonality, that there was any concern that any of the buyers had about the success of the other buyers. This is pure, and it's important here because it's because of this idea that there's one conspiracy that there's a 10-year mandatory minimum. If it wasn't for that one conspiracy, there wouldn't be a 10-year mandatory minimum. It would have been up to Judge Seibel to give the appropriate sentence, but she didn't have that option. She gave the sentence because of the mandatory minimum. And the jury did not find that either of the other two defendants at trial, Borea or Wheeler, were part of a conspiracy involving more than 5, sorry, 5 kilograms or more of cocaine or 28 grams of crack. They found in the case of one that it was over 500 grams and in the case of the other that it wasn't even 500 grams. So they didn't find this one conspiracy that the prosecutor says existed. And the effect of that variance in the, between the evidence and what was charged in the indictment, is that Mr. Goodman is spending 10 years in prison as a mandatory minimum. Thank you very much, Your Honors. I appreciated your purchase, your attention on a very long day that you've had here. The purchase is not reflected in the record. Thank you. The last two cases, United States, sorry, we'll take this under advisement. So thank you both. United States v. Martinez and George v. the U.S. Equal Employment Opportunity Commission are on submission. So I will ask the clerk please to adjourn court.